## IN THE UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF MINNESOTA

| | |
|---|---|
| LIFE SHARE COLLATERAL HOLDINGS, LLC,<br>a Delaware Limited Liability Company<br><br>Plaintiff,<br><br>v.<br><br>RONALD ALBERS, an Individual,<br>RAYMOND BYRON WHITAKER,<br>an Individual, D/B/A EASY FINANCIAL<br>SOFTWARE & SOLUTIONS, LLC,<br>REGINALD BARNES, an Individual,<br>and STERLING HARISS, an Individual.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>) Civil Action No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### COMPLAINT

NOW COMES the Plaintiff, Life Share Collateral Holdings, LLC ("LSCH"), by its attorneys, Adam M. Simon, The Simon Law Firm, and Thomas H. Schaefer, Erstad & Riemer, P.A., and complaining of Defendants, Ronald Albers ("Albers"), an individual, Raymond Byron Whitaker ("Whitaker"), an Individual d/b/a Easy Financial & Software Solutions, LLC, Reginald Barnes ("Barnes"), an individual, and Sterling Harris ("Harris"), an individual and states as follows:

### NATURE OF THE ACTION

1.     LSCH brings this action under Minnesota law for (i) a Default on a Loan and Personal Guaranty, (ii) common law fraud in the submission of loan and insurance applications which included fraudulent financial statements (the "Fraud"); (iii) conspiracy

to commit the Fraud, (iv) professional negligence against a certified public accountant arising out of his preparation of a financial statement used to perpetrate the Fraud; and (v) professional negligence against insurance agents arising out of their solicitation and sale of two life insurance policies, each with a death benefit of $10 million, that were unsuitable for the proposed insured in light of his true net worth and insurance needs.

## PARTIES AND VENUE

2.      LSCH is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located in the City of Chicago, County of Cook in the State of Illinois.

3.      LSCH is the successor-in-interest to the original Lender, Life Share Financial, LLC ("LIFE SHARE") with regard to the premium finance loans that are the subject matter of this case.  LSCH is also the assignee of Albers' claims against Barnes, Harris and Whitaker for their professional negligence.

4.      At all relevant times Albers was an individual residing in the City of McKinney, County of Collins in the State of Texas.

5.      On or about November 7, 2008, Albers formed the Ronald Albers 2008 Family Irrevocable Trust (the "Albers Trust"), a common law trust formed in the State of Minnesota and to be governed pursuant to the laws of the State of Minnesota.  Defendant appointed Wells Fargo Bank, N.A., as Trustee of the Albers Trust, and the Trustee's principal place of business is located in the City of Minneapolis, County of Hennepin, State of Minnesota.

6.    At all relevant times Defendant, Reginald Barnes (i) was a licensed life insurance agent in the State of Minnesota; (ii) held himself out to be a life insurance agent, financial planner and investment adviser; and (iii) had his principal place of business located in the City of Southlake, County of Tarrant, State of Texas.

7.    At all relevant times Harris (i) was a licensed life insurance agent in the State of Texas; (ii) held himself out to be a life insurance agent, financial planner and investment advisor; and (iii) had his principal place of business and/or residence located in the City of Dallas, County of Dallas, State of Texas.

8.    At all relevant times Whitaker (i) was an individual doing business as Easy Financial & Software Solutions, LLC; (ii) was a Certified Public Accountant and/or held himself out to be a Certified Public Account; and (iii) maintained his principal place of business in the City of Addison, County of Dallas, State of Texas.

9.    On or about December 16, 2008, the Albers Trust purchased two life insurance policies, each with a death benefit of $10 million, on the life of Ronald Albers from Lincoln National Life Insurance Company, policy #JJ7049715 and policy # JJ7052210 (collectively the "Policies").

10.    The Policies were issued by Lincoln National to the Albers Trust in the state of Minnesota, and the Policy states that it is to be governed by the laws of Minnesota.

11.     On or about December 16, 2008, the Albers Trust, as Borrower, and Albers as Insured entered into a Loan Agreement with Life Share Financial, LLC as the Lender. The purpose of the Loan Agreement was to provide financing for the payment of premiums for the purchase of the Policies.

12.     On or about December 16, 2008, Albers executed a personal guaranty in favor of Lender (the "Guaranty"), and its successors and assigns, in order to induce Lender to make the Loan to the Albers Trust.

13.     On or about December 16, 2008, Lender made the Loan to the Albers Trust and the payment of premium was made to put the Policies in force.

14.     Venue is proper in the U.S. District Court for the District of Minnesota pursuant to Albers' consent to jurisdiction set forth in the Loan Documents, and because the transactions or some part thereof out of which LSCH's causes of action arose occurred in the County of Hennepin in the State of Minnesota. Further, the Loan Documents expressly provide that the rights and obligations of the parties thereunder are to be determined in accordance with the laws of the State of Minnesota.

## GENERAL ALLEGATIONS

## ALBERS TRUST LIFE INSURANCE PURCHASE

15.     Upon information and belief, Harris had past business dealings with Albers where Harris solicited Albers to invest in one or more real estate deals.

16    Upon information and belief, during their prior business dealings, Harris became indebted to Albers in the amount of approximately $80,000.00.

17.    Upon information and belief, in March of 2008, Harris met with Albers and at that meeting Harris informed Albers that Harris was a licensed life insurance agent.

18.    Upon information and belief, in March of 2008, Harris met with Albers to sell Albers large amounts of life insurance utilizing premium financing to pay for the premiums.

19.    Upon information and belief, after one or two initial meetings, Harris introduced Albers to Barnes. Harris told Albers that Barnes was his "co-broker" and had the connections needed to finance the premium for the Policies.

20.    Upon information and belief, in a subsequent meeting in 2008, at Twin Creeks Restaurant in Lewisville, Texas, Defendants, Albers, Harris and Barnes met to complete application documents and financial statements in furtherance of a scheme to defraud Lincoln National and Life Share.

21.    Upon information and belief, at this meeting, Albers, Harris, and Barnes acting in concert, and for the unlawful purpose of defrauding Life Share as lender and Lincoln National as life insurer, did create a fraudulent financial statement that dramatically inflated Albers' net worth.

22.    Upon information and belief, Barnes and/or Harris took Albers' financial statement that they had prepared to Whitaker so he could sign off on it as a Certified Public Accountant.

23.     Upon information and belief, Whitaker did in fact use the financial statement provided by Harris, Barnes and Albers and, without any independent inquiry or verification, Whitaker printed the financial statement on his letterhead and signed off on the financial statement knowing it to be false or with reckless disregard for the truth or falsity of its contents.

24.     On or about August 21, 2008, Albers and the Albers Trust, by and through its agents Barnes and Harris, submitted a Life Share Loan Application, the financial statement, tax returns and other supporting documentation as Albers' loan application for a Life Share premium finance loan.

25.     On or about November 12, 2008, Albers, the Albers Trust and Barnes as the signing insurance agent submitted applications for life insurance to Lincoln National Life Insurance Company for two life insurance policies on the life of Ronald Albers, each with a death benefit of $10 million.

26.     On or about December 16, 2008, Lincoln issued the Policies in reliance upon the applications submitted by Defendants.

27.     On or about December 16, 2008, for good and valuable consideration, Albers executed a Loan and Security Agreement and Personal Guaranty in favor of the Lender. The Albers Trust also executed the Loan and Security Agreement and Loan Note in favor of the Lender. (The Loan and Security Agreement, the Loan Note and Personal Guaranty shall be collectively referred to herein as the "Loan Documents".)

28.    On or about December 16, 2008, the loan proceeds were used by Borrower to pay the initial premiums for the Policies.

29.    Upon information and belief, as a direct result of the scheme to defraud Lincoln and Life Share, Barnes and/or Harris received commissions arising from the sale of the Policies from Lincoln National totaling approximately $250,000.00.

30.    Upon information and belief, Harris, used a portion of his share of the commissions to repay Albers the $80,000.00 he owed him from the failed real estate investments.

**COUNT I**

**DEFAULT OF LOAN NOTE
AND PERSONAL GUARANTY**

31.    Plaintiff restates and realleges Par. 1-30 above, as Par. 31 of Count I.

32.    Pursuant to the Loan Documents, Defendant was obligated to pay all unpaid principal, interest and any other outstanding obligations on the maturity date ("Maturity Date").

33.    Borrower and Defendant defaulted under the Loan Documents by failing:

(i)   to pay to Plaintiff the amounts due under on or before the Maturity
        Date;

(ii)  to pay premiums required to keep the Policies in force; and

(iii) to keep the Policies in force and allowing the Policies to lapse.

34.     Despite Plaintiff's demand for payment, Albers has failed to pay the amounts due Plaintiff under the Loan Documents.

35.     As a direct and proximate result of Albers' default under the Loan Documents, LSCH has suffered damages equal to all principal and interest due pursuant to the terms of Loan Documents.

36.     Pursuant to the terms of the Loan Documents, LSCH is also entitled to recover interest after default at the default interest rate, and recover its costs of enforcing the Loan Documents including but not limited to recovery of its costs and attorney's fees.

37.     Pursuant to the terms of the Guaranty,  Albers personally guaranteed 25% of all sums owed by Borrower to Lender pursuant to the Loan Documents.

WHEREFORE, LSCH, prays for a judgment to be entered in its favor and against Defendant, Ronald Albers, an Individual,  for a sum in excess of $500,000.00 plus the cost of this action  reasonable attorney's fees together with such other relief as this Court deems just and proper.

## BACKGROUND – COUNT II

38.     On both the Lincoln National Application, and the financial statement which was a part of the Life Share Loan Application, Defendant represented to Life Share and Lincoln National that Albers' net worth was $24,915,000.00.

39.     Albers' financial statement was prepared and signed off on by Whitaker, and it states that it was "prepared in accordance with Statements on Standards for Accounting and

Review Services issued by the American Institute of Certified Public Accountants."

40.    The Life Share Loan Application, directly above Albers' signature includes the

following language:

"You hereby acknowledge and agree as follows:

(A)    You represent and warrant that all information set forth in this application or

which has been or is hereafter made available to us by you or any of your

representatives in connection with the transactions contemplated hereby is and

will be complete and correct in all material respects and does not and will not

contain any untrue statement of a material fact or omit to state a material fact

necessary in order to make the statements contained herein or therein not

materially misleading in light of the circumstanced under which such

statements are made;

(B)    You will supplement such information from time to time so that the

representations in the preceding clause (A) remain correct;

(C)    We will use and rely on such information without independent verification;

(D)    Approval of the loan is subject to, among other things, satisfactory credit and

collateral examination and completion by us of our due diligence; or internal

approvals; payment of all agreed fees and costs; and the execution and delivery

of the necessary legal documentation to give effect to the loan."

## COUNT II

## FRAUD

41.     LSCH restates and realleges ¶1-¶40 above, as ¶41 of Count II.

42.     In December of 2008, Defendant, Albers, both independently and through Defendants, Whitaker, Harris and Barnes made material representations to both Life Share Financial and Lincoln National regarding Albers' financial condition and net worth. Defendants' representations were contained in the Life Share application, the attached Financial Statement, and the Lincoln National life insurance application.

43.     The material representations made by Defendants regarding Albers' financial condition and net worth were false at the time they were made.

44.     Defendants made material representations regarding Albers' net worth knowing them to be false or with reckless disregard for the truth or falsity of such representations.

45.     The Life Share Loan Application and the Lincoln National Life insurance application both contain language setting forth Albers' acknowledgment and agreement that the representations made by Albers in those applications would be acted and relied upon by LSCH.

46.     Defendants intended to induce LSCH to rely on the misrepresentations contained in the applications when they were submitted to Life Share and Lincoln National.

47.     Lincoln National did in fact rely upon the representations contained in the applications when they approved and issued the Policies.

48.     Life Share did in fact reasonably and justifiably rely upon the representations contained in the Life Share loan application, the Financial Statement, the Lincoln National Life Insurance application when it made its decision to approve and make the loan to the Borrower subject to receipt Albers' personal guaranty.

49.     Albers did execute a personal guaranty, and Life Share did in fact make the loan to the Borrower. The loan proceeds were used to pay the initial premium for the Policies.

50.     LSCH also reasonably and justifiably relied upon the representations contained in the Life Share loan application, the Financial Statement, the Lincoln National Life Insurance application when it made its decision to purchase the Albers loan from Life Share.

51.     As a direct and proximate result of Defendants' material misrepresentations, LSCH suffered damages equal to the entire amount of the unpaid loan. In addition, LSCH is also entitled to recover interest after default at the default interest rate, and recover its costs of enforcing the Loan Documents including but not limited to recovery of its costs and attorney's fees.

WHEREFORE, LSCH, prays for a judgment to be entered in its favor and against Defendant, Ronald Albers, an Individual, Raymond Byron Whitaker an Individual d/b/a Easy Financial & Software Solutions, LLC, Sterling Harris, an Individual and Reginald Barnes, an Individual jointly and severally, for a sum in excess of $2,338,851.50 plus the cost of this

action reasonable attorney's fees together with such other relief as this Court deems just and proper.

**COUNT III**

**CONSPIRACY TO COMMIT FRAUD**

52.     LSCH restates and realleges ¶1-¶51 as ¶52 of Count III.

53.     Upon information and belief, at this meeting, Albers, Harris, and Barnes acting in concert, and for the unlawful purpose of defrauding Life Share as lender and Lincoln National as life insurer, did create a fraudulent financial statement that dramatically inflated Albers' net worth.

54.     Upon information and belief, Barnes and/or Harris took Albers' financial statement that they had prepared to Whitaker so he could sign off on it as a Certified Public Accountant.

55.     The Albers' Financial Statement was prepared and signed off on by Whitaker, and it states that it was "prepared in accordance with Statements on Standards for Accounting and Review Services issued by the American Institute of Certified Public Accountants."

56.     Barnes, Harris and Albers then submitted the Life Share Application including the Albers Financial Statement and the Lincoln National life insurance application to Life Share and Lincoln National for the purpose of defrauding Life Share and Lincoln National.

57.     As set forth above, Lincoln National, Life Share and LSCH all reasonably relied upon the material misrepresentations contained in the Life Share Application, Albers

Financial Statement and the Lincoln National life insurance application.

58.     As a direct and proximate result of Defendants' material misrepresentations, LSCH suffered damages equal to the entire amount of the unpaid loan.  In addition, LSCH is also entitled to recover interest after default at the default interest rate, and recover its costs of enforcing the Loan Documents including but not limited to recovery of its costs and attorney's fees.

WHEREFORE, LSCH, prays for a judgment to be entered in its favor and against Defendant, Ronald Albers, an Individual, Raymond Byron Whitaker an Individual d/b/a Easy Financial & Software Solutions, LLC, Sterling Harris, an Individual and Reginald Barnes, an Individual jointly and severally, for a sum in excess of $2,338,851.50 plus the cost of this action reasonable attorney's fees together with such other relief as this Court deems just and proper.

## COUNT IV

## PROFESSIONAL NEGLIGENCE -- ACCOUNTANT

59.     LSCH restates and realleges ¶1-¶58 above, as ¶59 of Count II.

60.     Upon information and belief, when Whitaker was retained by Albers, Harris and/or Barnes to prepare Albers' financial statement, Whitaker knew that Albers needed the financial statement to provide to third party lenders, and insurance companies in support of applications for insurance and a premium finance loan.

61.     When Whitaker prepared Albers's financial statement he knew that third party insurers and lenders would rely on the financial statement when making the decision to approve Albers's application for insurance and application for a premium finance loan.

62.     LSCH as successor in interest to LIFE SHARE did in fact reasonably rely on the Albers Financial Statement prepared by Whitaker when it decided to approve and make the loan to Borrower.

63.     Despite the fact that Albers' financial statement prepared by Whitaker expressly provides that --"we have compiled to accompanying financial statement of financial condition of Ronald Albers as of August 11, 2008 in accordance with the Statements on Standards for Accounting and Review Services issued by the American Institute of Certified Public Accountants" -- Whitaker deviated from the standard of care held to a Certified Public Accountant in that Whitaker failed to undertake any reasonable investigation or due diligence into the actual assets and liabilities owned individually by Albers.

64.     As a direct and proximate result of Whitaker's deviation from the standard of care in the preparation of Albers's financial statement, LSCH was damaged when it made the decision to purchase the Loan in an amount equal to the entire amount of the unpaid principal of the Loan, plus interest, attorneys' fees and costs.

WHEREFORE LSCH prays for a judgment to be entered in its favor and against Defendant, Raymond Whitaker, an individual, for a sum in excess of $476,000.00 plus the

cost of this action together with such other relief as this Court deems just and proper.

## COUNT V

## PROFESSIONAL NEGLIGENCE – INSURANCE AGENT

65.     LSCH restates and realleges ¶1-¶64 above as ¶65 of Count V.

66.     By virtue of an assignment from Albers to LSCH, LSCH is the successor-in-interest to Albers' claims against his insurance agents arising out of the purchase of the Policies.

67.     Upon information, at all relevant times Barnes and Harris held themselves out to be skilled insurance agents to Albers.

68.     When Barnes and Harris were acting as Albers insurance agent and advising him regarding his insurance needs, Barnes and Harris each owed Albers a duty to exercise reasonable skill, care and diligence in proposing and obtaining life insurance.

69.     Upon information and belief, Barnes and Harris breached the foregoing duties of care owed to Albers by proposing and executing a sophisticated insurance purchase for $20 million worth of life insurance coverage utilizing premium financing when Barnes and Harris knew or reasonably should have known that such a purchase was unsuitable in light of Albers' true insurance needs and financial condition.

70.     As a direct and proximate result of the Barnes' and Harris' violations of the standard of care, Albers sustained damages equal to the amount of Albers' total liability

under the premium finance loan.  LSCH is the assignee of Albers claims for damages as to

Barnes and Harris.

WHEREFORE, LSCH, prays for a judgment to be entered in its favor and against

Barnes and Harris, Individually,  for a sum in excess of $500,000.00 plus the cost of this

action  reasonable attorney's fees together with such other relief as this Court deems just and

proper.

**ERSTAD & RIEMER, P.A.**

Dated: 11/14/11

By: _____

Thomas H. Schaefer (#0231587)
8009 34th Avenue South, Suite 200
Minneapolis, MN 55425
Direct Line: 952-837-3250
Direct Fax: 952-767-7050
E-Mail: tschaefer@erstad.com

and

Adam M. Simon
The Simon Law Firm
303 E. Wacker Drive, Suite 210
Chicago, IL 60601
Phone: 313-819-0730
Fax: 312-819-0773
E-Mail: asimon@chicagolaw.com

*Attorneys for Plaintiff*
*Life Share Collateral Holdings, LLC*